By: Michael I. Assad (#338972023)
Sadek Law Offices LLC
1500 JFK Blvd., Suite 220
Philadelphia, PA 19102
215-545-0008
michael@sadeklaw.com
*Attorney for Plaintiff*

## United States Bankruptcy Court
## District of New Jersey
## Camden Vicinage

| | |
|---|---|
| In re: Juan A. Torres Jr., <br><br> *Debtor.* | Case No. 25-20765-ABA <br> Chapter 13 |
| Juan A. Torres Jr., <br><br> *Plaintiff,* <br><br> v. <br><br> South Jersey Gas Company, <br><br> *Defendant.* | Adversary No. 25-02467-ABA |

**Second Amended Complaint for Willful Violation of the Automatic Stay**

Plaintiff Juan A. Torres Jr. (the "Plaintiff"), for the Complaint against South Jersey Gas Company (the "Defendant"), alleges as follows:

**Jurisdiction**

1. The Court has subject matter jurisdiction under 28 U.S.C. § 1334(b) and the Standing Order of Reference.

2. The Court has personal jurisdiction over the Defendant under Fed. R. Bankr. P. 7004(f).

3. The Plaintiff has standing to bring this action under 11 U.S.C. §§ 362(k) and 1303.

4.      This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (G), and (O). To the extent that any claim is determined to be non-core, the Plaintiff consents to the entry of final orders and judgment by the Court.

5.      Venue is proper under 28 U.S.C. § 1409.

### Relevant Parties

6.      The Plaintiff is an individual debtor who commenced the above-captioned bankruptcy case by filing a voluntary petition (the "Petition") under chapter 13 of Title 11 of the United States Code on October 10, 2025 (the "Petition Date").

7.      The Defendant is a corporation organized under the laws of New Jersey, with its principal place of business at 1 South Jersey Plaza, Folsom, NJ 08037.

8.      Andrew Finburg (the "Trustee") is and has been the chapter 13 standing trustee assigned to the Plaintiff's bankruptcy case at all times since the Petition Date.

9.      The Bankruptcy Noticing Center (the "BNC") is a centralized facility that prepares and sends official notices in bankruptcy cases on behalf of bankruptcy courts under the supervision of the Director of the Administrative Office of the United States Courts.

### Facts

10.      Upon information and belief, prior to about December 1, 2021, the BNC regularly sent official bankruptcy notices to the Defendant about cases in which it was a party by mailing paper notices.

11.      Upon information and belief, on or about December 1, 2021, the BNC designated the Defendant as a high-volume recipient of paper notices under Fed. R. Bankr. P. 9036(2)(B).

12.     Upon information and belief, on or about December 1, 2021, the BNC notified the Defendant that it must register an electronic address with the BNC for service of bankruptcy notices by about January 15, 2022.

13.     Upon information and belief, the Defendant failed to register an electronic address with the BNC before about January 15, 2022, or at any other time relevant to this matter.

14.     Upon information and belief, on or about January 16, 2022, the BNC notified the Defendant that after about May 1, 2022, bankruptcy notices would be sent to the Defendant only through an internet portal maintained by the BNC (the "MEBN Portal") and not by mail.

15.     Upon information and belief, on or about January 16, 2022, the BNC provided the Defendant with the web address for the MEBN Portal and instructions for accessing it.

16.     At all times relevant to this matter, the Defendant had an ongoing duty and obligation to regularly, consistently, and reasonably access and review the MEBN Portal, to register an electronic address with the BNC for service of bankruptcy notices, or to otherwise take care that it was receiving and reviewing all electronic notices from the BNC in a timely manner.

17.     On or about March 20, 2025, the Plaintiff entered into a lease agreement with Watchtower Property Management for rental of a residential property located at 246 Stetser Avenue in the Township of Gloucester (Blackwood), County of Camden, and State of New Jersey (the "Residence"), and such lease remained in effect at all times relevant to this matter.

18.     At all times relevant to this matter, the Residence was the Plaintiff's primary residence.

19.     On or about March 20, 2025, the Plaintiff entered into a contract (the "Service Contract") with the Defendant which, among other things, required the Defendant to provide

natural gas utility service (the "Gas Service") to the Residence, and such contract remained in effect at all times relevant to this matter.

20.     At all times relevant to this matter, the Defendant asserted or held a claim for a debt owed by the Plaintiff for Gas Service rendered before the Petition Date that was not paid when due (the "Pre-Petition Claim").

21.     At all times relevant to this matter, the Plaintiff relied on the Gas Service as the only means of heat and hot water for the Residence, and the Residence's range, oven, and clothes dryer were powered only by gas.

22.     On the Petition Date, the Plaintiff's leasehold interest in the Residence (the "Leasehold") became property of the bankruptcy estate and remained property of the estate at all times relevant to this matter.

23.     On the Petition Date, the Residence was fully habitable. At all times relevant to this matter, the continuation of such full habitability was of consequential value and benefit to the bankruptcy estate.

24.     On the Petition Date, the Plaintiff's interest in the Service Contract and right to continued Gas Service under its terms became property of the bankruptcy estate and remained property of the estate at all times relevant to this matter.

25.     The Bankruptcy Noticing Center notified the Defendant about the Plaintiff's bankruptcy through the MEBN Portal on October 14, 2025.

26.     Upon information and belief, the Defendant willfully, recklessly, intentionally, and unreasonably failed to access or review the MEBN Portal on October 14, 2025, or at any other time relevant to this matter.

4

27.     The Defendant continuously provided the Gas Service at all times from the Petition Date until November 5, 2025 (the "Shutoff Date").

28.     From the Petition Date through the Shutoff Date, the Plaintiff incurred no post-petition arrearages with respect to the Gas Service and otherwise remained in compliance with all of his obligations under the Service Contract.

29.     The Defendant did not demand that the Plaintiff or the Trustee furnish the Defendant with adequate assurance of payment in the form of a deposit or other security at any time between the Petition Date and the Shutoff Date.

30.     On the Shutoff Date, the Defendant willfully, intentionally, and affirmatively terminated the Gas Service.

31.     The Defendant terminated the Gas Service to coerce the Plaintiff to pay the Pre-Petition Claim.

32.     By terminating the Gas Service, the Defendant exercised control over the Residence, altered the status quo of the Leasehold, and deprived the bankruptcy estate of its full interest in a habitable primary residence.

33.     By terminating the Gas Service, the Defendant exercised control over the Service Contract, altered the status quo of the Service Contract, and deprived the bankruptcy estate of its full interest in continued Gas Service.

34.     On the Shutoff Date, the Plaintiff demanded that the Defendant immediately restore the Gas Service, but the Defendant failed to do so on that date.

35.     On November 6, 2025, the Plaintiff demanded that the Defendant immediately restore the Gas Service, but the Defendant failed to do so on that date.

36.     The Gas Service remained terminated at all times from the Shutoff Date until about 4:00 p.m. on November 7, 2025.

37.     On November 7, 2025, the Defendant willfully, intentionally, and affirmatively caused the Gas Service to be restored.

38.     The Defendant did not demand that the Plaintiff furnish the Defendant with adequate assurance of payment in the form of a deposit or other security as a condition of restoring the Gas Service.

39.     The Defendant has continued to provide the Gas Service at all times since November 7, 2025.

40.     Neither the Plaintiff nor the Trustee has furnished the Defendant with adequate assurance of payment in the form of a deposit or other security at any time since the Petition Date.

41.     At all times since the Petition Date, the Plaintiff is and has been ready, able, and willing to provide the Defendant with adequate assurance of payment in the form of a deposit or other security.

42.     Collectively, the conduct described in Paragraphs 1 through 41 is referred to below as the "Post-Petition Collection Misconduct."

43.     As an actual and proximate result of the Post-Petition Collection Misconduct, the Plaintiff suffered injuries including, but not limited to lost wages incurred from missing work to contact the Defendant and seek assistance from his attorney; physical distress, including chills, discomfort from cold showers, and inability to prepare hot meals or dry clothes due to the lack of heat, hot water, and gas-powered appliances during chilly weather; significant emotional distress, including severe anxiety, humiliation, stress, sleep disturbances, and feelings of helplessness

6

caused by the sudden and unwarranted deprivation of essential utilities which exacerbated the Plaintiff's existing financial and personal vulnerabilities during his bankruptcy and time of financial misfortune; and attorney's fees and costs incurred in investigating the misconduct, demanding restoration, and prosecuting this action.

44.     Upon information and belief, the Defendant's willful, reckless, intentional, and unreasonable failure to regularly, consistently, and reasonably access and review the MEBN Portal, to register an electronic address with the BNC for service of bankruptcy notices, or to otherwise take care that it was receiving and reviewing all electronic notices from the BNC in a timely manner has caused it to habitually violate the automatic stay in other cases. Such violations include, but are not limited to, coercing payment of pre-petition debts, exercising control over property of bankruptcy estates, and applying estate property to pre-petition claims without court approval. This pattern of misconduct warrants the imposition of punitive damages to coerce compliance with the bankruptcy code and to prevent similar misconduct by the Defendant and others similarly situated.

45.     No prior judgments, orders, or proceedings exist that bar this action under res judicata or collateral estoppel.

46.     Documentary evidence supports the allegations herein, including but not limited to records from the BNC, the Defendant's billing and account records, and records of the Plaintiff's restoration demands.

*[This space intentionally left blank.]*

## Count I
### Willful Violation of the Automatic Stay

47.     The Plaintiff realleges Paragraphs 1 through 46 as if fully set forth herein.

48.     Under 11 U.S.C. § 362(a), the filing of the Petition created an automatic stay of all acts to (i) collect, assess, or recover a pre-petition claim against the Plaintiff; and (ii) exercise control over property of the estate.

49.     The automatic stay took effect on the Petition date and remained in effect at all times relevant to this matter.

50.     The Defendant violated 11 U.S.C. § 362(a) by engaging in the Post-Petition Collection Misconduct.

51.     The Post-Petition Collection Misconduct was willful because the Defendant had notice of the bankruptcy and intended the actions that violated the stay, regardless of any asserted good faith.

52.     The Post-Petition Collection Misconduct injured the Plaintiff.

53.     Under 11 U.S.C. § 362(k), the Plaintiff is entitled to actual damages, punitive damages, and attorney's fees and costs.

## Count II
### Declaratory and Injunctive Relief

54.     The Plaintiff realleges Paragraphs 1 through 53 as if fully set forth herein.

55.     An actual controversy exists regarding the practices that resulted in the Post-Petition Collection Misconduct.

56.     The Court must declare that the Post-Petition Collection Misconduct violates 11

U.S.C. § 362(a) and permanently enjoin the Defendant from continuing such practices against the

Plaintiff and others similarly situated.

## Request for Relief

For good cause shown, the Plaintiff respectfully requests that the Court enter judgment

against the Defendant:

A.     declaring that the Post-Petition Collection Misconduct violates 11 U.S.C. § 362(a);

B.     awarding the Plaintiff actual damages, punitive damages, and attorney's fees and costs under 11 U.S.C. § 362(k);

C.     entering appropriate injunctive relief under 11 U.S.C. § 105(a) to prevent further violations; and

D.     awarding such other and further relief as may be necessary and proper under the law.

Date: February 7, 2026                          **SADEK LAW OFFICES LLC**
                                                *Attorney for Plaintiff*

                                                By: /s/ Michael I. Assad
                                                    Michael I. Assad

## Demand for Jury Trial

The Plaintiff demands a jury trial on all issues so triable and consents to such trial in the

Bankruptcy Court, or in the District Court if the reference must be withdrawn.

Date: February 7, 2026                          /s/ Michael I. Assad
                                                Michael I. Assad